E-FILED
Wednesday, 09 February, 2022  02:00:11 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| **TRICIA LIPSCOMB**, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:22-cv-1039 |
| v. | ) ) | |
| **GIORGIO ARMANI CORPORATION,** | ) ) | Jury Demanded |
| Defendant. | ) ) | |

## CLASS ACTION COMPLAINT & JURY DEMAND

Plaintiff Tricia Lipscomb ("Plaintiff"), individually and on behalf of all other similarly situated individuals, brings this Class Action Complaint against Defendant Giorgio Armani Corporation ("Defendant") for violations of the Illinois Biometric Information Privacy Act ("BIPA" or "the Act"), 740 ILCS 14/1 *et seq*. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief including investigation conducted by her attorneys:

### NATURE OF THE ACTION

1.      Defendant sells various cosmetic products on its website, including facial makeup products.

2.      Defendant's website has a virtual "Try-it-On" feature that enables consumers to see how beauty products will look on them by uploading a picture of their face or turning on their live camera (using a webcam or a smartphone, for example).

3.      Defendant's Try-it-On feature uses software that utilizes facial geometry data and facial detection and recognition technologies to digitally apply cosmetic products to the images and live videos of consumers' faces.

4.      The Try-it-On feature conducts a facial geometry scan of uploaded photos and live camera images and collects, captures or otherwise obtains datapoints from the facial geometry scans, and then uses the datapoints in the Try-it-On technology to digitally apply the beauty products to a customer's face in the image.

5.      In doing so—and in demonstrating to consumers what beauty products may look like on them—the Try-it-On tool's face-scanning technology extracts, collects, captures, obtains and uses consumers' unique facial geometry data, biometric information and biometric identifiers, as defined by the Illinois Biometric Information Privy Act ("BIPA"), 740 ILCS 14/1 *et seq*.

6.      Defendant is violating BIPA by, among other things, failing to inform consumers that it is collecting, capturing, obtaining and using their biometric information and identifiers, failing to inform consumers about how their biometric data is being retained, and failing to obtain informed written consent from consumers to collect their biometric information and identifiers.

7.      Defendant is depriving consumers of any meaningful opportunity to make an informed decision about the collection and use of their own biometrics, in direct violation of BIPA.

**PARTIES, JURISDICTION, AND VENUE**

8.      Plaintiff Tricia Lipscomb is an individual citizen of the State of Illinois who resides in the Central District of Illinois.

9.      Defendant Giorgio Armani Corporation is a New York company incorporated in New York with its principal place of business in New York.  Defendant's Illinois registered agent is located in Springfield, Illinois.

10.      Defendant does business throughout the United States of America, in Illinois, and as it is related to Plaintiff, in this District.  Defendant owns and/or operates at least one store in the State of Illinois.

11.    Defendant is registered with the Illinois Secretary of State to do business in Illinois.

12.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332 in that Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.

13.    Jurisdiction is also proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d) ("CAFA"), because: (i) the proposed class consists of well over 100 members; (ii) the parties are minimally diverse, as members of the proposed class, including Plaintiff, are citizens of a state different from Defendant's home state; and (iii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. The estimated number of Illinois residents impacted by Defendant's conduct in Illinois is in excess of 10,000 multiplied by BIPA's statutory liquidated damages figure ($5,000 for each intentional or reckless violation and $1,000 for each negligent violation) easily exceeds CAFA's $5,000,000 threshold.

14.    Venue is proper in this District because Defendant conducts business transactions in this District, and the causes of action arose, in substantial part, in this District. Venue is additionally proper because Plaintiff resides in this District.

**DEFENDANT'S BIOMETRIC FACIAL-SCANNING OF ILLINOIS CONSUMERS**

15.    Defendant sells various cosmetic products, including makeup, lip stick, eye shadow and other beauty products through its website www.giorgioarmanibeauty-usa.com.

16.    As part of their sales pitch on Defendant's website (www.giorgioarmanibeauty-usa.com) to consumers like Plaintiff, and through the use of augmented reality technology, Defendant offers a Try-it-On feature that allows consumers to virtually try on makeup and other products (illustrated below):



17.     To operate the Try-it-On feature and software, consumers are required to select the product they would like to try on and then upload a picture of their face or turn on their live camera, for example, using a webcam or a smartphone.

18.     Consumers are encouraged to virtually try on these products before ordering them online or buying them in stores.

19.     Utilizing a photo or a camera (*e.g.*, either on a user's device or a webcam in stores), the Try-it-On program scans a potential customer's face, identifies the potential consumer's facial geometry, and then allows that potential customer to "try on" various cosmetic products to the potential consumer's face as shown in the photo or to the camera.

20.     Defendant's Try-it-On feature and technology uses an algorithm that scans the face in each photo and video to detect facial features or landmarks and calculates a unique digital map

of the face (*i.e.*, a face template) based on geometric attributes such as the distance between various facial features.

21.     Each facial geometry scan and face template constitutes a "biometric identifier" and "biometric information." *See* 740 ILCS 14/10.

22.     Much like fingerprints, voiceprints, and retinal patterns, facial geometry and each face template is unique to, and can be used to identify, a particular person.  Simply stating that one's "photo" or "image" is being collected does not meet BIPA's requirement to inform a person that their "biometric identifier" or "biometric information" is being collected.

23.     The Try-it-On feature utilizes technology from ModiFace, as shown by the URL address:



24.     ModiFace is a beauty tech company with technology and software that uses augmented reality to allow users to digitally try on different makeup products.

25.     ModiFace explains on its website (www.modiface.com) that its virtual try-on software uses proprietary facial tracking, recognition and detection technology and software.

26.     The virtual try-on software, as ModiFace explains on its website "tracks movements and expressions through 68 non-identifying parameters including lip and eye edges, iris size and location, head pose, as well as skin features including spots, texture, and wrinkles." (www.modiface.com).  Illustrating this point, the ModiFace website shows the following:



27.    In other words, ModiFace's virtual try-on software – and Defendant's Try-it-On feature – extracts, tracks, analyzes, and records facial features and landmarks and data related thereto from the uploaded photo or live camera image.

28.    In performing its function, Defendant's Try-it-On feature employs face detection technology. For example, when the uploaded picture does not contain a human face, the Try-it-On tool does not function. This is also the case when users choose to employ their live webcam— when objects other than human faces are pictured, the tool does not respond.

29.    In demonstrating to consumers what beauty products may look like on them, the Try-it-On feature automatically extracts, possesses, collects, captures, obtains and uses "biometric information" and "biometric identifiers" as defined in BIPA.

## SUBSTANTIVE ALLEGATIONS

30.    BIPA expressly obligates Defendant to obtain an executed, written release from an individual, prior to the capture, collection, possession, obtainment and/or storage of an individual's biometric identifiers or biometric information, especially a facial geometry scan and biometric information and identifiers derived from it.

31.    BIPA obligates Defendant to inform its potential customers in writing that a biometric identifier or biometric information is being collected, captured or obtained; to tell its

potential customers in writing how long it will store their biometric data or information and any purposes for which biometric information is being captured, collected, obtained and used; and to make available a written policy disclosing when it will permanently destroy such information.

32.     BIPA makes all of these requirements a *precondition* to the collection or recording of face geometry scans or other associated biometric information.

33.     Under the Act, no biometric identifiers or biometric information may be captured, collected, purchased, obtained, or used if these pre-capture, pre-collection, pre-storage, or pre-obtainment requirements are not met.

34.     There is no realistic way, absent surgery, to reassign someone's facial biometric data.

35.     A person can obtain a new social security number, but not a new face, which makes the protection of, and control over, biometric identifiers and biometric information critical.

36.     In direct violation of BIPA, Defendant captured, collected, received through trade, and/or otherwise obtained biometric identifiers or biometric information of their Illinois customers or potential customers, like Plaintiff, without properly obtaining the required informed written consent, and without making the required disclosures concerning the capturing, collection, obtaining, use, or destruction of biometric identifiers or information.

37.     Moreover, Defendant caused these biometrics to be associated with consumers, along with other consumer information.

38.     The Try-it-On feature on Defendant's website collects, captures, obtains and uses consumers' facial geometry and related biometric information and identifiers without proper consent, in direct violation of BIPA.

39.     Defendant has no written policy, made available to the public, that discloses its retention schedule and/or guidelines for retaining and then permanently destroying consumer biometric identifiers and information that complies with the requirements of BIPA.

40.     Plaintiff and the putative Class are aggrieved by Defendant's failure to destroy their biometric data when the initial purpose for collecting, capturing or obtaining such data has been satisfied or within three years of the consumers' last interactions with the company, whichever occurs first.

41.     Plaintiff seeks damages and injunctive relief for Defendant's BIPA violations, for herself and all those similarly situated.

**PLAINTIFF-SPECIFIC ALLEGATIONS**

42.     Plaintiff has, at relevant times, had her facial geometry data, biometric information and biometric identifiers collected, captured, and used by Defendant.

43.     On January 7, 2022, Plaintiff used Defendant's Try-it-On feature on Defendant's website and its live camera option for virtually trying on beauty products.

44.     When visiting Defendant's website on January 7, 2022, Plaintiff used Defendant's Try-it-On feature and live camera option to virtually try on lipstick, mascara and foundation.

45.     When Plaintiff used the Try-it-On feature, Defendant unlawfully collected, captured, obtained and used her biometrics when Defendant scanned Plaintiff's facial geometry and landmarks and used her facial geometry and landmarks from the image(s) to apply the product to her face.

46.     When Plaintiff used Defendant's Try-it-On feature, Defendant never asked her to consent to Defendant collecting, capturing, obtaining, or using her facial geometry, biometric identifiers or biometric information.

47.    Defendant has never informed Plaintiff of the specific purposes or length of time for which Defendant collected, captured, obtained or used her facial geometry, biometric identifiers or biometric information.

48.    Defendant has never informed Plaintiff of any specific biometric data retention policy developed by Defendant, nor has she ever been informed of whether Defendant will ever permanently delete her facial geometry, biometric identifiers or biometric information.

49.    Defendant has never provided Plaintiff with, nor did she ever sign, a written release allowing Defendant to collect, capture, use, or otherwise obtain her facial geometry, biometric identifiers or biometric information.

50.    Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by Defendant's violations of BIPA as alleged herein.

51.    Plaintiff did not know or fully understand that Defendant would be collecting, capturing, obtaining and/or using biometrics when Defendant scanned Plaintiff's face; nor did Plaintiff know or could Plaintiff know all of the uses or purposes for which Plaintiff's biometrics were taken and used by Defendant.

52.    Plaintiff did not order a product, sign up to receive emails or create or account when she used Defendant's Try-it-On feature or at any other time.

**THE CONSENT POP-UP AND PRIVACY POLICY MAKE NO MENTION OF BIOMETRICS AND DO NOT COMPLY WITH BIPA REQUIREMENTS**

53.    Before using Defendant's Try-it-On tool, consumers may be required to mark or click on the webpage in a consent pop-up ("Consent Pop-Up") that they consent to a privacy policy ("Privacy Policy") (see ¶ 16 *supra*).

54.     The Consent Pop-Up states "I consent. By using 'Try It On,' I understand Giorgio Armani Beauty may process my image.  To learn about your choices, visit the <u>Giorgio Armani Beauty Privacy Policy</u>."

55.     The Consent Pop-Up does not inform the consumer that the Virtual Try-it-On feature takes a person's image and extracts their unique facial geometry and related biometric information and identifiers.

56.     Additionally, the Consent Pop-Up links to a Privacy Policy that fails to make any mention of biometrics or facial geometry whatsoever.

57.     The very lengthy Privacy Policy merely specifies "If you use one of our Try-it-On features, we may collect and store your image(s)".

58.     Neither the Consent Pop-Up, nor the Privacy Policy state or inform the consumer that Defendant takes uploaded photographs or live viewings of a consumer's face and converts the images into facial geometry data, biometric information or biometric identifiers.

59.     Neither the Consent Pop-Up, nor the Privacy Policy state or inform the consumer that Defendant collects their facial geometry, biometric information or biometric identifiers.

60.     Neither the Consent Pop-Up, nor the Privacy Policy state or inform the consumer that Defendant obtains their facial geometry, biometric information or biometric identifiers.

61.     Neither the Consent Pop-Up, nor the Privacy Policy state or inform the consumer that Defendant stores their facial geometry, biometric information or biometric identifiers.

62.     Neither the Consent Pop-Up, nor the Privacy Policy state or inform the consumer that Defendant captures their facial geometry and biometric information or biometric identifiers.

63.     Neither the Consent Pop-Up, nor the Privacy Policy state or inform the consumer that Defendant uses their unique facial geometry data, biometric information or biometric identifiers.

64.     While the Privacy Policy states that identifiers such as photos, names, addresses, and telephone numbers are collected, stored and used, it fails to disclose that unique facial geometry data, biometric information and biometric identifiers of consumers are collected, captured, obtained, used or stored.

65.     The Privacy Policy states that Defendant is a "member" of the "L'Oréal family of brands": "We are a member of the L'Oreal USA family of brands and this privacy policy sets forth how we collect, use and safeguard information you entrust with us."

66.     However, Defendant is a separate, distinct and unrelated corporate entity from L'Oreal U.S.A., Inc.

67.     Defendant is neither a direct nor indirect subsidiary of L'Oreal U.S.A., Inc.

68.     Defendant is not an affiliate of L'Oreal U.S.A., Inc.

69.     Moreover, Defendant offers its Try-it-On feature on its own website.

70.     Buried deep into the Defendant's lengthy Privacy Policy is the statement that an entity named "L'Oreal USA may transfer and disclose information, including your Personal Information, and any other information that we have collected, to third parties to comply with a legal obligation; when we believe in good faith that the law requires it; at the requests of governmental authorities conducting an investigation; to verify or enforce our Terms of Use [hyperlinked] or other applicable policies; to respond to an emergency; or otherwise to protect the rights, property, safety, or security of third parties, visitors to our Sites or the public."

71.     The Privacy Policy does not incorporate – directly or by reference or by adoption – these "Terms of Use."

72.     Additionally, the "Terms of Use" are not set forth in the privacy policy.

73.     The Privacy Policy does not say anywhere that it is subject to the "Terms of Use" that are listed on a webpage different from the privacy policy's webpage.

74.     A consumer who uses Defendant's Try-it-On feature—but never orders a product, signs up to receive emails or creates an account— never agrees or consents to these "Terms of Use."

75.     Plaintiff did not ever agree to or accept  the "Terms of Use" that is hyperlinked in the small print buried deep into the Privacy Policy.

76.     BIPA's requirement that companies obtain informed written consent before collecting biometric information and/or biometric identifiers is not satisfied by the Consent Pop-Up or the linked Privacy Policy, neither of which make any mention nor any disclosure of any kind that Defendant collects, captures, obtains, uses or stores consumers' unique facial geometry data, biometric information and biometric identifiers.

77.     Further, BIPA's requirement that companies have accessible retention and destruction guidelines and policies is not satisfied by the Consent Pop-Up or the linked Privacy Policy.

### THE BIOMETRIC INFORMATION PRIVACY ACT AND ILLINOIS'S STRONG STANCE ON PROTECTION OF BIOMETRIC INFORMATION

78.     BIPA provides valuable rights, protections, and benefits to consumers in Illinois.

79.     For example, BIPA's requirements ensure that the environment for taking of biometrics is not forced or coerced; that individuals are freely advised that, by scanning one's facial geometry, the retailer is capturing, extracting, creating, and recording biometrics; that

individuals can keep tabs on their biometric roadmaps (*e.g.*, who has their biometrics, for how long,  and how it is being used), including after one's relationship ceases, or after the retailer stops storing the consumer's biometrics if at all; that individuals can evaluate the potential consequences of providing their biometrics; that companies must give individuals the right, and opportunity, to freely consent (or decline consent) **before taking** their biometrics; and that, if the disclosure does not say so, the consumer's biometrics will not be used for any other purpose except for those approved by the consumer.

80.     To this end, in passing the Biometric Information Privacy Act (hereinafter "the Act") in 2008, the Illinois general assembly found:

(a) The use of biometrics is growing in the business and security screening sectors and appears to promise streamlined financial transactions and security screenings.

(b) Major national corporations have selected the City of Chicago and other locations in this State as pilot testing sites for new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias.

(c) Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions.

(d) An overwhelming majority of members of the public are weary of the use of biometrics when such information is tied to finances and other personal information.

…

(e) The full ramifications of biometric technology are not fully known.

(f) The public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information.

*See* 740 ILCS 14/5, Legislative findings; intent.

81.     BIPA is specifically designed to require a company that collects biometrics to meet several conditions, **before collection**, aimed, in part, at educating and protecting the person whose biometrics it is taking for its own use, and requiring signed, written consent attesting that the individual has been properly informed and has freely consented to biometrics collection.

82.     The Act defines "Biometric identifier" as:

a retina or iris scan, fingerprint, voiceprint, or scan of head or face geometry...

*See* 740 ILCS 14/10.

83.     The Act defines "Biometric information" as:

any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual. Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers.

*See* 740 ILCS 14/10.

84.     The Act defines "Confidential and sensitive information" as:

personal information that can be used to uniquely identify an individual or an individual's account or property. Examples of confidential and sensitive information include, but are not limited to, a genetic marker, genetic testing information, a unique identifier number to locate an account or property, an account number, a PIN number, a pass code, a driver's license number, or a social security number.

*See* 740 ILCS 14/10.

85.     The Act defines "Private entity" as:

any individual, partnership, corporation, limited liability company, association, or other group, however organized...

*See* 740 ILCS 14/10.

86.     The Act defines "Written release" as:

informed written consent or, in the context of employment, a release executed by an employee as a condition of employment.

*See* 740 ILCS 14/10.

87.     The Act requires:

A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.

*See* 740 ILCS 14/15(a).

88.     Additionally, the Act provides:

No private entity may collect, capture, purchase, receive  through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

(1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

*See* 740 ILCS 14/15(b).

89.     Further, the Act provides:

No private entity in possession of a biometric information may sell, lease, trade or otherwise profit from a person's or a customer's biometric identifier or biometric information.

*See* 740 ILCS 14/15(c).

90.     The Act also provides:

No private entity in possession of a biometric identifier or biometric information may disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless:

> (1) the subject of the biometric identifier or biometric information or the subject's legally authorized representative consents to the disclosure or redisclosure;

> (2) the disclosure or redisclosure completes a financial transaction requested or authorized by the subject of the biometric identifier or the biometric information or the subject's legally authorized representative;

> (3) the disclosure or redisclosure is required by State or federal law or municipal ordinance; or

> (4) the disclosure is required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction.

*See* 740 ILCS 14/15(d).

91.    Furthermore, the Act provides:

A private entity in possession of a biometric identifier or biometric information shall:

> (1) store, transmit, and protect from disclosure all biometric identifiers and biometric information using the reasonable standard of care within the private entity's industry; and

> (2) store, transmit, and protect from disclosure all biometric identifiers and biometric information in a manner that is the same as or more protective than the manner in which the private entity stores, transmits, and protects other confidential and sensitive information.

*See* 740 ILCS 14/15(e).

92.    BIPA provides statutory damages if a private entity takes an Illinois consumer's biometrics by circumventing BIPA's preconditions and requirements.

93.    The Act explicitly provides a private right of action for violations of the Act, and provides that a prevailing party "may recover for each violation:"

> (1) against a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater;

16

(2) against a private entity that intentionally or recklessly violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater;

(3) reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses; and

(4) other relief, including an injunction, as the State or federal court may deem appropriate.

See 740 ILCS 14/20.

94.　　BIPA's formalized protections enable consumers to consent to the taking of their biometrics, if they so choose, after receiving legislatively-required information.

95.　　As BIPA demonstrates, the State of Illinois takes the privacy of biometric data seriously.

96.　　BIPA is the Illinois Legislature's expression that Illinois residents have biometric rights that BIPA is intended to protect.

97.　　Defendant disregarded these rights and instead unlawfully collected, stored, and used Plaintiff's and consumers' biometric identifiers and information, without ever receiving the individual's informed written consent as required by BIPA.

## CLASS ALLEGATIONS

98.　　Plaintiff brings this action on behalf of herself and pursuant to 735 ILCS 5/2-801 on behalf of a class (hereinafter the "Class") defined as follows:

All Illinois residents who used Defendant's Try-it-On feature in Illinois between February 9, 2017 and the present.

Excluded from the Class are Defendant's officers and directors, Plaintiff's counsel, and any member of the judiciary presiding over this action.

99.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

100.     **Numerosity**: The exact number of Class members is unknown to Plaintiff at this time, but on information and belief exceeds 100, in which case, individual joinder is impracticable. Defendant has collected, captured, received, or otherwise obtained biometric identifiers or biometric information from over 100 individuals who fall into the definition of the Class. Ultimately, the Class members will be easily identified through Defendant's records.

101.     **Commonality and Predominance**: There are questions of law and fact common to the claims of Plaintiff and Class, and those questions predominate over any questions that may affect individual members, and frame issues for class-wide adjudication.  Common questions for the Class include, but are not necessarily limited to the following:

A.  Whether Defendant captured, collected, used or otherwise obtained scans of facial geometry from the Class;

B.  Whether the facial scan data Defendant captures qualifies as "biometric identifiers" and/or "biometric information" under BIPA;

C.  Whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and information when the initial purpose for collecting, capturing, using and obtaining such identifiers or information has been satisfied or within three years of the individual's last interaction with Defendant, whichever occurs first;

D.  Whether Defendant obtained an executed written release from face-scanned

consumers, before capturing, collecting, using, sharing, storing, obtaining or using their biometrics;

E. Whether, in order to collect biometrics, Defendant provided a writing disclosing to face-scanned consumers the specific purposes for which their biometrics are being collected, captured, obtained or used;

F. Whether, in order to collect, capture, obtain or use biometrics, Defendant provided a writing disclosing to face-scanned consumers the length of time for which their biometrics are being collected, captured, obtained or used;

G. Whether Defendant's conduct violates BIPA;

H. Whether Defendant's conduct was negligent, reckless or willful;

I. Whether Plaintiff and the Class are entitled to damages, and what is the proper measure thereof; and

J. Whether Plaintiff and the Class are entitled to injunctive relief.

102. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor her counsel have any interest adverse to those of the other members of the Class.

103. **Appropriateness**: This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered

by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct.  Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct.  Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.  By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.  Economics of time, effort and expense will be fostered and uniformity of decisions will be ensured.

**COUNT I**
**VIOLATIONS OF ILLINOIS BIOMETRIC INFORMATION PRIVACY ACT**
**(Damages)**

104.    Plaintiff, individually and on behalf of all others similarly situated, repeats and re-alleges the preceding allegations as though fully set forth herein.

105.    BIPA is a remedial statute designed to protect consumers, by requiring consent and disclosures associated with the handling of biometrics, particularly in the context of biometric technology. 740 ILCS §§ 14/5(g), 14/10 and 14/15(b)(3).

106.    The Illinois General Assembly's recognition of the importance of the public policy and benefits underpinning BIPA's enactment, and the regulation of biometrics collection, is detailed in the text of the statute itself.  *E.g.,* 740 ILCS § 14/5(a), (c), (d), (f), (g).

107.    Further, in a unanimous decision, the Illinois Supreme Court made clear that **"Compliance should not be difficult."**  *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 37 (Jan. 25, 2019).  (emphasis added).

108.     Additionally, the Illinois Supreme Court has made clear that the Illinois Legislature intended to "subject[] private entities who fail to follow the statute's requirement to substantial potential liability, including liquidated damages, injunctions, attorney fees, litigation expenses " 'for each violation' of the law (*id.*, § 20) whether or not actual damages, beyond violation of the law's provisions, can be shown." *Id.* at ¶ 36.

109.     "It is clear that the legislature intended for this provision to have substantial force." *Id.* at ¶ 37.

110.     Defendant has been a "private entity" in possession of Plaintiff's and other consumers' and individuals' biometrics, and collected and captured their biometric identifiers and biometric information within the meaning of the Act.

111.     As more fully set forth above, at relevant times Defendant obtained, collected, and stored Plaintiff's and other individuals' biometric identifiers and biometric information based on those identifiers as defined by BIPA, 740 ILCS § 14/10, through Defendant's facial scanning platform.

112.     In violation of Section 14/15(a) of the Act, Defendant failed to make a written policy publicly available to Plaintiff and other Class members or comply with it.

113.     In violation of Section 14/15(b) of the Act, Defendant has collected, captured, obtained and/or used Plaintiff's and other Class members' biometric identifiers and biometric information without:

      a.     informing Plaintiff and the Class (including, where applicable, their legally authorized representatives), in writing, that their biometric identifiers or biometric information were being collected, captured, obtained and/or used;

      b.     informing Plaintiff and the Class (including, where applicable, their legally

authorized representatives), in writing, of the specific purpose and length of term which the biometric identifiers or biometric information were being collected, captured, obtained and/or used; and,

    c.   receiving a written release executed by Plaintiff and the Class.

114.   Defendant took Plaintiff's and other Class members' facial scans, and knowingly caused their biometrics to be collected, captured, obtained and/or used without making publicly available the required policy that explains, for example, any purpose for which the biometric identifiers and information were collected or obtained, a retention schedule, and guidelines for permanently destroying biometric identifiers and information.

115.   As a result of Defendant's above-described acts and omissions, Defendant has unlawfully taken Plaintiff's and the Class members' biometrics; it has failed to provide them with information required by BIPA; it has deprived them of benefits, rights, opportunities and decisions conferred and required by the Illinois legislature via BIPA; and it illegally tracked, collected, captured, obtained, recorded, possessed, converted and/or used their facial scans, biometrics and property.

116.   By collecting, storing, and using Plaintiff's and the Class members' biometric identifiers and biometric information as described herein, Defendant violated the BIPA rights of Plaintiff and each Class member.

117.   Additionally, to the extent Defendant has disclosed Plaintiff's and the Class members' biometric information to any third parties or vendors without first obtaining Plaintiff's and the Class members' written consent, Defendant has further violated BIPA.

118.   Accordingly, Defendant has violated BIPA, and Plaintiff and the Class are entitled to damages available under BIPA, including damages for each violation.

**COUNT II**
**VIOLATIONS OF ILLINOIS BIOMETRIC INFORMATION PRIVACY ACT**
**(Injunctive Relief)**

119.    Plaintiff, individually and on behalf of all others similarly situated, repeats and re-alleges the preceding allegations as though fully set forth herein.

120.    BIPA provides for injunctive relief. 740 ILCS § 14/20(4).

121.    Plaintiff and other Class members are entitled to an order requiring Defendant to make disclosures consistent with the Act and enjoining further unlawful conduct.

122.    First, Plaintiff seeks an order requiring Defendant to publicly disclose a written policy establishing any specific purpose and length of term for which Plaintiff's and other consumers' biometrics have been collected, captured, obtained, used or stored, as well as guidelines for permanently destroying such biometrics when the initial purpose for collecting, capturing, obtaining, using or storing such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first, as required by 740 ILCS § 14/15(a).

123.    Second, Plaintiff seeks an order requiring Defendant to disclose whether Defendant has retained Plaintiff's and other consumers' biometrics in any fashion, and if, when, and how such biometrics were permanently destroyed, consistent with BIPA.

124.    Third, Plaintiff seeks an order requiring Defendant going forward to obtain a written release from any individual, prior to the collection, capture, obtainment or use of that individual's biometric identifier or biometric information, especially a facial geometry scan, and biometric information derived from it.

125.    Fourth, due to the aforementioned facts, and Defendant's failure to make publicly available facts demonstrating BIPA compliance as BIPA requires, Defendant should be ordered

to: (i) disclose the extent to which (and precisely how and to whom) it has disseminated, sold, leased, traded, or otherwise profited from Plaintiff's and other face scanned consumers' biometric information, which is strictly prohibited under BIPA; and (ii) disclose the standard of care that it employed to store, transmit, and protect such biometrics, as provided under BIPA.  740 ILCS § 14/15(c), (d), (e).

126.    Fifth, Defendant should be enjoined from further BIPA non-compliance, and should be ordered to remedy any BIPA compliance deficiencies forthwith.

127.    Plaintiff's and other Class members' legal interests are adverse to Defendant's legal interests.

128.    There is substantial controversy between Plaintiff and Defendant warranting equitable relief so that Plaintiff and the Class may obtain the protections that BIPA entitles them to receive.

129.    Plaintiff and the Class do not know what Defendant has done (or intends to do) with their stored biometrics.  Absent injunctive relief, Defendant is likely to continue their BIPA non-compliance and Plaintiff and other Class members will continue to be uninformed on their rights under BIPA.

130.    For the reasons set forth above, Plaintiff and the Class are likely to succeed on the merits of their claims.

131.    BIPA establishes the importance, value, and sensitive nature of biometrics, along with the need to protect and control it; Plaintiff and the Class are entitled to know what Defendant has done with it as set forth above, and to an affirmation and verification that it has been permanently destroyed as required by 740 ILCS § 14/15(a).

132.    The gravity of the harm to Plaintiff and the Class, absent equitable relief, outweighs

any harm to Defendant if such relief is granted.

133.    As a result, Plaintiff requests commensurate injunctive relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays

that the Court grant the following relief:

A.  Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Tricia Lipscomb as Class Representatives, and appointing Donelon, P.C. and the Law Office of Thomas M. Ryan, P.C. as Class Counsel;

B.  Declaring that Defendant's actions, as set forth above, violate BIPA;

C.  Awarding statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20(1);

D.  Declaring that Defendant's actions, as set forth above, were intentional and/or reckless;

E.  Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including an Order requiring Defendant to collect, store, use and disseminate biometric identifiers and/or biometric information in compliance with BIPA;

F.  Awarding Plaintiff and the Class their reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3);

G.  Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and,

H.  Awarding such other and further relief as equity and justice may require.

Dated: February 9, 2022                     Respectfully Submitted,

                                            /s/ Brendan Donelon
                                            One of Plaintiff's Attorneys

Brendan Donelon                             Daniel W. Craig
DONELON, P.C.                               DONELON, P.C.
4600 Madison Avenue                         6642 Clayton Rd., #320
Kansas City, Missouri 64112                 St. Louis, Missouri 63117
Tel:  (816) 221-7100                        Tel:  (314) 297-8385
Fax:  (816) 709-1044                        Fax:  (816) 709-1044
brendan@donelonpc.com                       dan@donelonpc.com

Thomas M. Ryan,
LAW OFFICE OF THOMAS M. RYAN, P.C.
35 E. Wacker Drive, Suite 650
Chicago, IL 60610
Tel:  (312) 726-3400
Fax:  (312) 782-4519
tom@tomryanlaw.com